NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0531n.06
Filed: July 28, 2006

Case No. 05-6214

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | **ON APPEAL FROM THE** |
| | ) | **UNITED STATES DISTRICT** |
| **v.** | ) | **COURT FOR THE MIDDLE** |
| | ) | **DISTRICT OF TENNESSEE** |
| **BRIAN WAYNE HENLEY,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |

BEFORE:    KENNEDY and COLE, Circuit Judges; and VARLAN, District Judge[*]

VARLAN, District Judge.    Defendant-Appellant Brian Wayne Henley was sentenced to a term of imprisonment of 52 months followed by a three-month period of supervised release for violating the conditions of supervised release. On appeal, Henley argues that (1) the district court erred by relying on a factor not enumerated in 18 U.S.C. § 3553(a) when determining his sentence; and (2) the district court imposed a sentence that was plainly unreasonable. For the reasons that follow, we **AFFIRM** the judgment of the district court.

I.

On November 4, 1994, Brian Wayne Henley was convicted pursuant to his guilty plea of one count of possession with intent to distribute more than one kilogram of

---

[*]The Honorable Thomas A. Varlan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

methamphetamine and one count of using or carrying a firearm in relation to a drug trafficking crime by the United States District Court for the District of Colorado. The defendant was sentenced to a total of 102 months imprisonment followed by five-year and three-year concurrent terms of supervised release. After completing his term of imprisonment, the defendant began supervised release on August 17, 2001. On October 13, 2004, the District of Colorado requested transfer of jurisdiction over the defendant to the Middle District of Tennessee, and jurisdiction was accepted and assumed by the Middle District of Tennessee on October 25, 2004.

Shortly after his release, the defendant began working at a meat processing plant in Tennessee, where he performed well and was ultimately promoted to a supervisory position. Defendant met and married a co-worker and became the primary financial provider for his wife and her three children. The defendant also made regular child support payments for his children from a previous marriage.

In the summer of 2003, defendant's nephew, Bobby Ray Henley, a convicted felon from California, came to live in the defendant's home. The parties agree that Bobby Henley's presence in defendant's home led to the defendant's destructive behavior. Once in August 2004 and once in September 2004, defendant tested positive for methamphetamine. The record also reflects that the defendant was arrested in December 2004 for selling and possessing drugs and drug paraphernalia, for tampering with evidence, and for possession of a firearm. However, the defendant did not admit and was not convicted of these alleged violations of supervised release.

On January 6, 2005, the district court issued a warrant for the defendant's arrest asserting four violations of the conditions of his supervised release. Specifically, defendant was charged with violating the following conditions: that he not commit another federal, state, or local crime; that he not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances; and that he not associate with any persons engaged in criminal activity, and not associate with any person convicted of a felony unless granted permission to do so by the probation officer. When the U.S. Marshals came to his home to arrest the defendant for the revocation proceedings, he drove off through the yard with a woman and a child in the car and almost side-swiped a U.S. Marshal's car as he fled the scene at a high rate of speed.

On January 17, 2005, the defendant was stopped for speeding in Benton, Kentucky. Defendant then tried to elude the police in a seven-mile chase at a very high rate of speed during which he endangered numerous motorists and eventually hit another motorist head-on. The defendant was charged with several violations of Kentucky law: three counts of wanton endangerment; two counts of assault; fleeing and evading police; possession of methamphetamine; and speeding.

In March 2005, the Kentucky state court sentenced Henley to 10 years imprisonment pursuant to his guilty plea to the state charges arising from the evasion episode. As part of the plea agreement, the 10-year term was ordered to run concurrently with Henley's previously served time in the 1994 federal case from Colorado. Henley served

3

approximately five months for the Kentucky offenses and was then released on detainer pending the revocation hearing.

On March 3, 2005, the district court issued an order amending the petition to add two new violations: committing another federal, state, or local crime; and leaving the judicial district without the permission of the court or probation officer. The defendant's recommended Sentencing Guidelines range was 46 to 57 months.

The district court initiated a revocation hearing on July 18, 2005, at which time the defendant admitted to violations three through six of the amended petition: associating with a convicted felon; testing positive for drug use on two occasions; leaving the judicial district; and committing a state crime. There was some confusion as to the resolution of the Kentucky charges, and the hearing was continued to allow the parties to investigate that issue. The revocation hearing continued on July 21, 2005, at which time the district court revoked defendant's supervised release and sentenced him to 52 months imprisonment followed by three months of supervised release. In imposing sentence, the district court stated:

> The court is mindful that you have done a good job for three and a half years, and accepts the contention that when you let your nephew in your life, things turned awry. But the Court also has to consider particularly the offense involving the seven mile high speed chase that endangered several people's lives and involved a potential head-on collision. I just think that that is the sentence necessary to reflect the seriousness of that seven mile very high rate of speed pursuit.
>
> I realize that you served five months on the Kentucky sentence for that, and the Court has recognized that in not imposing 57 months.

4

The Court will recommend that you be placed at a facility that will enable you to get the drug treatment that you need and expects that if you are successful, that that will – you will have the opportunity to reduce your sentence further.

The district court then asked both parties if there were any other matters. With the exception of the defendant's request to be recommended for placement in Lexington, Kentucky, there were no other questions or objections raised to the sentence.

On July 25, 2005, the defendant filed a motion requesting that the district court reconsider and reduce the term of incarceration by 12 months to 40 months imprisonment. The district court denied the motion for reconsideration on July 26, 2005. The defendant filed a timely notice of appeal from the district court's orders.

II.

When a defendant does not object to the imposition of sentence at his revocation hearing, this court may only review his sentence for plain error.[1] Fed. R. Crim. P. 52(b); *United States v. Johnson*, 403 F.3d 813, 815 (6th Cir. 2005). Plain error review is limited in four respects. First, error must occur. *Id*. Second, the error must be plain, by which the Supreme Court has stated that "[a]t a minimum, the Court of Appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law." *Id*. (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). Third, the error must "affect substantial rights," which

---

[1]The defendant argues that he did raise an objection to the district court's consideration of the length of the sentence imposed in Kentucky. When the district court opined that "if it wasn't addressed in Kentucky, it would have to be addressed here," defense counsel responded by saying "Yes, sir, it was addressed by Kentucky with a ten year sentence." However, after sentence was imposed, the defendant did not pose any objection to the sentence pronounced. Defense counsel's argument is not sufficient to constitute an objection such as to avoid plain error review.

"in most cases ... means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." *Id.* (quoting *Olano*, 507 U.S. at 734). Finally, plain error review is permissive. *Id.*

We do not find that the district court committed plain error. A district court sentencing for revocation of supervised release must sentence in a manner that reflects consideration of certain factors set forth in 18 U.S.C. § 3553(a). *Johnson*, 403 F.3d at 815; *United States v. Washington*, 147 F.3d 490, 491 (6th Cir.), *cert. denied*, 525 U.S. 954 (1998). The relevant factors include "the nature of the offense; the need to deter criminal conduct, to protect the public, and to provide defendant with appropriate treatment; any guideline range for sentencing; guideline policy statements; and avoidance of unwarranted disparities." *Washington*, 147 F.3d at 491; 18 U.S.C. §§ 3553(a) and 3583(e).[2]

The defendant argues that the factors listed in § 3553(a) constitute the universe of factors to be considered and that the district court may not rely on considerations "ulterior" to § 3553(a). Relying on *United States v. Burgos*, 276 F.3d 1284 (11th Cir. 2001), defendant argues that a sentence that is imposed to accomplish some purpose other than those identified in § 3553(a) is an unlawful sentence and outside the district court's discretion. The defendant claims that the district court improperly reviewed the judgment of the Kentucky

---

[2]18 U.S.C. § 3583(e) provides that a court may revoke a term of supervised release "after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." Thus, the only § 3553(a) factors which are not identified for consideration in revocation proceedings are: § 3553(a)(2)(A), the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; and § 3553(a)(3), the kinds of sentences available.

court and determined that the Kentucky court failed to "really address[]" the offense in Kentucky and that the sentence imposed was "illusory." Thus, defendant argues that the district court relied on § 3553(a)(2)(A), an unauthorized factor pursuant to § 3583(e), and used the revocation sentence as a substantive sentence for the new criminal conduct to compensate for a perceived failure of the state court which is not contemplated by the Sentencing Guidelines. *See* U.S.S.G. Ch. 7, Pt. A(3)(b) ("the sentence imposed upon revocation would be intended to sanction the violator for failing to abide by the conditions of the court-ordered supervision, leaving the punishment for any new criminal conduct to the court responsible for imposing the sentence for that offense").

In *Burgos*, the Eleventh Circuit considered whether the sentencing guidelines authorize the district court to penalize a defendant for refusing to cooperate with the government in an unrelated criminal investigation. *Burgos*, 276 F.3d at 1285. After entering a plea to failing to file currency transaction reports, Ms. Burgos refused to cooperate with the government in a pending investigation against her husband that was unrelated to the charges against her. *Id*. at 1286. Because she refused to cooperate, the district court sentenced her to a six-month term of imprisonment, the top of the guideline range. *Id*. at 1287. The Eleventh Circuit concluded that 18 U.S.C. § 3661 and U.S.S.G. § 1B1.4, which give broad discretion to the sentencing court, were limited by 18 U.S.C. § 3553. *Id*. at 1288-89. The Eleventh Circuit held that consideration of Burgos's refusal to cooperate in the case against her husband did not achieve any of the goals set forth in § 3553(a)(2) and therefore exceeded the district court's discretion. *Id*. at 1290.

This court need not decide whether to follow the *Burgos* court because the present case is distinguishable. Most importantly, *Burgos* did not involve a revocation of supervised release and the limitation of § 3583(e) upon the § 3553(a) factors in revocation proceedings. In *Burgos*, the sentencing court considered and penalized the defendant for refusing to cooperate in a criminal investigation that had no connection to her or the charges against her. In the present case, the defendant challenges the district court's consideration of the sentence he received in Kentucky for conduct which is also one of the admitted violations of supervised release. Thus, the conduct and the sentence imposed in Kentucky were relevant to the district court's consideration of the petitions to revoke defendant's supervised release.

In reviewing the district court's decision to determine if an error occurred which affected defendant's substantial rights, this court must give consideration to the district judge's conclusion that, "I just think that that is the sentence necessary to reflect the seriousness of that seven mile very high rate of speed pursuit." Such a statement clearly implicates the district court's consideration of "the need for the sentence imposed to reflect the seriousness of the offense ... and to provide just punishment for the offense" pursuant to § 3553(a)(2)(A), a factor not identified for consideration in revocation proceedings by § 3583(e). However, it is clear that under the other § 3553(a) factors, such as the nature and circumstances of the offense in § 3553(a)(1) or the need to protect the public from further crimes of the defendant in § 3553(a)(2)(C), that the district court could appropriately consider the defendant's conduct in Kentucky in determining whether to revoke his supervised release and for what term of imprisonment. Thus, we do not find that the court's

8

consideration of those events was in error. Moreover, it is worth noting that defense counsel specifically asked the district court "to take into account that he did serve the five months up there. ...I'm not saying that's all that the Court can do or should do, necessarily." This court cannot conclude that the district court committed plain error by considering what the defendant asked it to consider.

The district court clearly indicated both orally and in the written order that the petition and the amended petition for revocation were considered. As this court has previously noted, there is no requirement that the district court engage in a "ritualistic incantation" of the sentencing factors considered in order to satisfy a legal standard. *Washington*, 147 F.3d at 491 (quoting *U.S. v. Davis*, 53 F3d 638, 642 (4th Cir. 1995)). The district court stated that it had considered defendant's initial success on supervised release, but that it also was considering the nature of the violations and particularly the high speed chase. The district court further recommended that the defendant receive drug treatment. Finally, the district court stated that it had considered the five month sentence served by the defendant in Kentucky and therefore would not impose a 57-month sentence at the top of the recommended Guidelines range. Thus, the district court considered the nature of the defendant's violations of supervised release, the need to deter his criminal conduct, the need to protect the public, the need to provide the defendant with appropriate treatment, and the recommended Guidelines range. The district court committed no error.

III.

9

The defendant argues that the 52-month sentence was plainly unreasonable because he demonstrated compelling equities that entitled him to a sentence at the bottom of the advisory Guidelines range. The defendant points to his three successful years on supervised release during which time he was employed and supporting a wife and children. The defendant suggests that he relapsed only when he tried to help his at-risk nephew and that his recent violations of the law could have been more serious. Thus, the district court should not have assumed that 57 months was the proper starting point for determining the defendant's sentence and should have given full credit to the Kentucky court's adjudication of the state offense. Defendant also argues in his reply brief that this court should review the sentence for unreasonableness in light of *United States v. Booker*, 543 U.S. 220 (2005), as discussed in *Johnson*, 403 F.3d at 816-817.

Sentences imposed for revocation of supervised release are reviewed to determine whether they are "plainly unreasonable." *Johnson*, 403 F.3d at 816. Like the *Johnson* case, this court need not decide whether to conclude that the *Booker* "reasonableness" standard of review applies to sentences imposed for revocation of supervised release because no error occurred. The defendant admitted to violating several conditions of supervised release, including twice testing positive for drugs, allowing a convicted felon to live with him, leaving the judicial district, and committing several crimes in Kentucky. The district court reasonably considered these offenses to be serious, particularly the defendant's high speed chase in Kentucky. In imposing sentence, the district judge acknowledged the equities in defendant's favor, but also found that the sentence needed to reflect the seriousness of the

10

high speed chase. The court recommended that the defendant be placed at a facility with a drug treatment program, a consideration that was not unreasonable in light of the defendant's admitted relapse. Thus, the defendant's sentence was neither unreasonable nor plainly unreasonable.

## IV.

For all the reasons discussed above, we **AFFIRM** the judgment of the district court.